The MENOMINEE TRIBE OF INDIANS, et al.

v.

The UNITED STATES.

No. 134–67–E.

United States Court of Claims.

April 21, 1982.

Jerry C. Straus, Washington, D. C., attorney of record, for plaintiffs. Frances L. Horn, R. Anthony Rogers, Philip A. Nacke, Wilkinson, Cragun & Barker, Washington, D. C., of counsel.

Glen R. Goodsell, Washington, D. C., with whom was Asst. Atty. Gen. Kent Frizzell, for defendant.

Before FRIEDMAN, Chief Judge, and DAVIS and BENNETT, Judges.

## OPINION

### PER CURIAM:

This case comes before the court on plaintiffs' motion, filed February 8, 1982, withdrawing their previously filed notice of intention to except and requesting that the Court adopt as its basis for its decision in this case the recommended decision filed by Trial Judge Louis Spector on May 27, 1981, pursuant to Rule 134(h), the time within which defendant could have filed a notice of intention to except having expired. Upon consideration thereof, since the court agrees with the recommended decision, as hereinafter set forth,* it hereby grants plaintiffs'

motion and adopts the decision as the basis for its judgment in this case. Accordingly, plaintiffs are not entitled to recover on their claim for termination expenses, except to the extent that reimbursement of said expenses is authorized by Section 6 of the Menominee Termination Act, as amended, with the amount thereof to be determined in further proceedings pursuant to Rule 131(c).

## OPINION OF TRIAL JUDGE

SPECTOR, Trial Judge: This is the sixth in a long and complex series of related claims for money damages.[1] The instant claim deals with expenses incurred by the Menominee Tribe in preparation for termination of federal supervision over the tribe. Plaintiffs here allege that the Government breached its fiduciary duty toward the Menominees by holding them responsible for the expenses incurred in terminating the fiduciary relationship. Plaintiffs further allege that the requirement that the Menominees pay their own termination expenses also constituted a fifth amendment taking of the tribe's property without just compensation. Plaintiffs seek to recover all of the termination expenses which they incurred. Alternatively, they contend that even if this court were to deny the claim, many items of termination expenses were in fact clearly reimbursable under Section 6 of the Menominee Termination Act but were never paid to the tribe.[2] Plaintiffs therefore seek a separate trial to detail and to supply proof of such expenses.

It is herein concluded that under the facts presented defendant is not liable for a fifth amendment taking of plaintiffs' property. Moreover, it is further concluded un-

---

* Although the court adopts the trial judge's separate findings of fact, which are set forth in his report, they are not printed herein.

1. The five earlier opinions published are: Docket No. 134–67 (Basic), filed July 19, 1978, *vacated with instructions*, 221 Ct.Cl. 506, 607 F.2d 1335 (1979), *cert. denied*, 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980); No. 134–67 ·A (Deed Restrictions), filed March 22, 1979, *remanded* by order of June 13, 1980, republished on reconsideration January 2, 1981; No.

134–67–B (Forest Mismanagement), filed April 4, 1980; No. 134–67–C (Mill Mismanagement), filed August 14, 1980; No. 134–67–D (Highway Rights-of-Way), filed January 27, 1981.

2. Section 6 of the Menominee Termination Act deals with limited reimbursement of termination expenses. The section as originally promulgated and as amended, is quoted in the findings.

der a prior decision that the court lacks jurisdiction over a claim that the Government breached its fiduciary duty toward the Menominees by making the tribe liable for termination expenses in accordance with Section 6 of the Termination Act.[3] Plaintiffs are, however, clearly entitled to all expenses for termination detailed in Section 6. If the parties cannot reach a settlement as to the amount due under that section, a separate trial will be required for that purpose.

Federal protection and supervision over the Menominees was terminated pursuant to the Menominee Termination Act of 1954, effective in 1961. The history of termination, the opposition of the Menominees to termination, and the principal provisions of the Act are set forth in the "Deed Restrictions" claim, Docket No. 134–67–A.

The specific provision of the Act at issue in this case is Section 6. That section originally provided for the selection and retention of management specialists to make studies and reports in contemplation of the forthcoming termination. Under Section 6, those studies were to be paid for out of Menominee funds. Section 6 was subsequently twice amended.

The first amendment, approved on July 14, 1956, resulted from a bill introduced by then Congressman Melvin Laird. The Laird bill authorized the expenditure of United States funds to carry out the purposes of Section 6. It contemplated funding of the expenses of services of experts as contemplated by Section 6. It did not, however, provide for the funding of other termination expenses. Senator Alexander Wiley of Wisconsin introduced an identical bill in the Senate.

Support for the legislation was strong. At hearings on the Laird bill, Wisconsin Attorney General Thomson submitted a letter in support of the measure. He emphasized that not only were the Indians spending great sums of their own money in support of a federal policy leading to termination, but that the State of Wisconsin was also appropriating considerable funds of its own and making available many of its own experts in various fields to help solve the problems growing out of federal termination. Congressman John Byrnes spoke of the great strain placed on tribal funds by the payment of these termination expenses. The tribe's general counsel emphasized the responsibility of the Federal Government to ease the termination process which it had initiated. William Zimmerman, formerly the Acting Commissioner of Indian Affairs, saw it as a continuation of the federal trust responsibility.

Following these hearings, Congress enacted an amendment to the Termination Act which was stronger than the original Laird and Wiley bills. It authorized federal funding of termination expenses in addition to those enumerated in the original Section 6. It provided, moreover, for federal reimbursement of the tribe rather than direct federal funding of the expenses as contemplated in the original Laird-Wiley bills.

The second effort to amend Section 6 began in 1957. On August 6, 1957, the House reported favorably on a bill extending the date for submission of the termination plan to December 31, 1959, and the date for final termination to June 30, 1961. A companion Senate bill had been introduced on May 22, 1957. Neither of these bills contained a provision dealing with reimbursement for termination expenses.

When the bill went to the Senate Committee on Interior and Insular Affairs, a limited reimbursement provision was added as follows:

> In order to reimburse the tribe, in part, for expenditures of such tribal funds as the Secretary deems necessary for the purposes of carrying out the requirements of this section, there is hereby authorized to be appropriated out of any money in the Treasury not otherwise appropriated, an amount equal to all of such expenditures incurred prior to the date this sentence becomes effective [July 2,

---

**3.** See Menominee Tribe of Indians v. United States, 221 Ct.Cl. 506, 607 F.2d 1335 (1979), cert. denied, 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980).

1958], plus one-half of such expenditures incurred thereafter, or the sum of $275,-000, whichever is the lesser amount.

This second amendment not only limited reimbursement to one-half of the expenses incurred by the Menominees after July 2, 1958 (or $275,000, whichever is lesser), but it also had the effect of limiting reimbursement solely to the costs of experts' studies and reports, as had been described in the original Section 6. After July 2, 1958, other types of termination expenses which had been reimbursable under the earlier 1956 amendment were rendered nonreimbursable by the second amendment.

The Senate committee report made it evident that reimbursement of the Menominees' termination expenses was being curtailed because similar action had been taken with respect to the Klamath Tribe of Indians of Oregon which was also in the process of being terminated. The limitation on reimbursement provision also apparently grew out of a suggestion to Congress by Acting Secretary of the Interior Hatfield Chilson. In a letter dated August 12, 1957, he linked a request for extension of the then established 1958 termination date with a cut in reimbursement of termination expenses. It was his position that it would be fair to cut back the federal share to only one-half of approved termination costs incurred during the extended 2-year period. A month earlier, in July 1957, Mr. Chilson as Under Secretary of the Interior had written to the House Interior Committee stating that although the department was concerned with mounting costs of the "transitional program," it still felt that the Federal Government should bear the necessary and direct costs for termination.

In contrast to the 1956 amendment, the 1958 amendment met with considerable opposition in Congress. Wisconsin Senator William Proxmire opposed the cutback in reimbursement of termination costs as a breach of faith with the Menominee Tribe and Senator Wiley of Wisconsin also opposed it as unfair. Congressman Laird similarly opposed the cut but accepted it with reluctance only because it was absolutely necessary to secure a 2-year extension of the effective date of termination. The Menominee position was essentially the same as that of Congressman Laird. The tribe was willing to accept a reduction in the reimbursement of termination expenses if that was the only way to secure a 2-year extension of federal supervision.

Further efforts to reinstate the full reimbursement provision were unsuccessful. Section 6 of the Termination Act remained as amended in 1958 so as to limit reimbursement as above detailed. Plaintiffs herein claim that it is a breach of the fiduciary duty itself for the Government to impose the expense of terminating the fiduciary relationship upon the tribe.

■ The claim for termination expenses rests squarely on the enactment by Congress of Section 6 of the Act, as amended. This court has addressed the issue of its jurisdiction to entertain a nonconstitutional breach of trust claim based on the theory that " * * * Congress itself, in enacting a statute, violated * * * a general trust obligation owed by the United States as a government to the Indians." [4] The court on that issue has held that the perimeter of its general jurisdiction does not embrace a suit contending that a statute passed by Congress, though valid and constitutional, is nevertheless a breach of trust owed by the Federal Government to the Indians.[5] The opinion specifically observes that:

> The jurisdictional barrier against our appraisal of Congress's action in enacting the Termination Act covers (a) any evaluation of Congressional motives or the interests Congress was pursuing; (b) any alleged failure of Congress to prepare the Menominees for termination, to make a full and fair disclosure to them of all pertinent facts, to allow further time before termination was effected, to give greater assistance to the Indians in the termination process, to reconsider the pol-

4. *Id.* at 514, 607 F.2d at 1340.

5. *Id.* at 512, 607 F.2d at 1339.

icy of termination, to adopt modified legislation, or to determine before final amendment of the Act whether the Tribe and its members were ready to assume management and control of their property and affairs; and (c) any alleged duress or pressure by Congress or its members on the Menominees to obtain their consent to termination.[6]

Plaintiffs' argument that defendant was serving its own self-interest in terminating its fiduciary duties to the tribe, and particularly in making the tribe liable for the resultant expense, is met in the above quotation. Any evaluation of congressional motives or interests is jurisdictionally barred.

Alternatively, plaintiffs urge that the decision to make the Menominees responsible for the expense of their own termination constituted a taking without just compensation, contrary to the fifth amendment of the Constitution. It is argued that the Termination Act, by requiring the Menominee Tribe to deplete tribal funds without reimbursement and to pay the expenses of termination, accomplished a taking of plaintiffs' property as surely as if Congress had directly confiscated those funds or any other Menominee property. Although not jurisdictionally barred[7] the alternative claim of a fifth amendment taking is deemed to be without merit.

■ The clause of the fifth amendment at issue in this case states simply "nor shall private property be taken for public use, without just compensation." The Supreme Court has stated that the:

Fifth Amendment's guarantee * * * [is] designed to bar the Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.[8]

The determination of whether a particular governmental action rises to the level of a taking requires an essentially *ad hoc*, case-by-case inquiry into the relevant facts.[9] The facts herein do not carry the claim to that level.

■ The Government did not directly confiscate plaintiffs' property in this case. Moreover, the expenditure of tribal funds for termination expenses does not rise to the level of an indirect act of confiscation. Cases cited by plaintiffs do not support that conclusion. While the motives and interests of the Congress in enacting the final amendment to Section 6 of the Act may not have been entirely pristine, the record fails to demonstrate such lack of good faith as would be necessary to sustain a claim of an unconstitutional taking.

■ Although plaintiffs' claim for reimbursement of all termination expenses must be denied, plaintiffs are entitled (as stated at the outset) to reimbursement of all those expenses prescribed by Section 6 of the Act. The type and amount of these expenses actually incurred are not evident from the record. This claim is therefore remanded to the parties for settlement or further proceedings pursuant to Rule 131(c).

## CONCLUSION OF LAW

Upon the foregoing opinion and the findings of fact set forth in the trial judges' report which are adopted by the court, the court concludes as a matter of law that plaintiffs are not entitled to recover on this claim for termination expenses, except to the extent that reimbursement of termination expenses is authorized by Section 6 of the Menominee Termination Act, as amended, the amount thereof to be determined in further proceedings under Rule 131(c).

6.  *Id.* at 521, 607 F.2d at 1344–45.

7.  *See* note 4, *supra*, and 28 U.S.C. § 1491 and § 1505.

8.  *Penn Central Transp. Co. v. New York*, 438 U.S. 104, 123–24, 98 S.Ct. 2646, 2658–59, 57 L.Ed.2d 631 (1978), *citing Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

9.  *Id.* 438 U.S. at 124, 98 S.Ct. at 2659. *See also, Klamath and Modoc Tribes v. United States*, 193 Ct.Cl. 670, 685, 436 F.2d 1008, 1015, cert. denied 404 U.S. 950, 92 S.Ct. 271, 30 L.Ed.2d 267 (1971).